UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK _____ x

JOSÉ L. SALMERÓN-DE JESÚS and
FRANCISCO J. MEDINA-SUÁREZ,

             Plaintiffs,

         -against-

NORTHERN DUTCHESS LANDSCAPING INC.,
JAMES MEDDAUGH, and INTERNATIONAL LABOR
MANAGEMENT CORPORATION, INC.,

            Defendants.

_____ x

08 Civ. No.____

**08 CIV. 2168**

**JUDGE KARAS**

## COMPLAINT

### Preliminary Statement

1.    The instant action is brought by two workers who, _inter alia_, were grossly underpaid while they were employed on a seasonal or temporary basis by Northern Dutchess Landscaping Inc. and James Meddaugh ("Employer Defendants") over the course of several years. Defendant International Labor Management Corporation, Inc. ("ILMC"), individually or through its agents, recruited Plaintiffs in Mexico for work at Employer Defendants' operations during some years. All of the Defendants regularly and willfully violated the most basic provisions of federal and state law. Because of these violations, Plaintiffs José L. Salmerón-de Jesús and Francisco J. Medina-Suárez here bring individual and collective claims under the Fair Labor Standards Act ("FLSA"), and individual claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), and New York Labor Law, and common law contract, promissory estoppel, unjust enrichment and quantum meruit claims.

2.    Plaintiffs and others similarly situated regularly worked more than forty hours in a work week – at times working more than 65 hours per week – but were never paid overtime for their work.

3.    Plaintiffs and others similarly situated directly incurred various fees and expenses, for which they were never reimbursed, as a result of their employment-related relocations. These costs were incurred for the benefit of Employer Defendants and had the effect of lowering the wages of Plaintiffs and others similarly situated below the applicable minimum wage.

4.    Plaintiffs' claims under the FLSA in this representative action are brought for themselves and on behalf of others similarly situated.

<u>Jurisdiction and Venue</u>

5.    The Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) (FLSA), 29 U.S.C. § 1854(a) (AWPA), 28 U.S.C. § 1337 (acts relating to commerce), and 28 U.S.C. § 1331 (federal question jurisdiction). Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

6.    The Court has jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiffs' state law claims involve the same transactions and occurrences as Plaintiffs' federal claims, and form part of the same case and controversy as Plaintiffs' federal claims.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1854(a). A substantial part of the events and occurrences giving rise to this action occurred within this district.

8.    The unlawful employment practices described in this complaint were committed within
this district.

9.    Employer Defendants reside and do business in this district.

10.    ILMC does business in this district.

Parties

11.    At all relevant times, Plaintiffs José L. Salmerón de-Jesús and Francisco J. Medina-
Suárez were employed by Employer Defendants and resided in Dutchess County, New
York.

12.    At all relevant times, Plaintiffs José L. Salmerón-de Jesús and Francisco J. Medina-
Suárez were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. §
1802(10)(A).

13.    Northern Dutchess Landscaping Inc. is a duly registered domestic corporation which has
its principal place of business in Dutchess County, New York.

14.    At all relevant times, James Meddaugh had an ownership interest in and maintained
operational control over Northern Dutchess Landscaping Inc. and was a joint employer of
the Plaintiffs.

15.    At all relevant times, Defendants Northern Dutchess Landscaping Inc. and James
Meddaugh were "employers" of Plaintiffs and others similarly situated within the
meaning of the FLSA.

16.    At all relevant times, Defendants Northern Dutchess Landscaping Inc. and James
Meddaugh were "employers" of Plaintiffs within the meaning of the AWPA and New
York Labor Law.

3

17.    At all relevant times, Defendants Northern Dutchess Landscaping Inc. and James

Meddaugh were "agricultural employers" within the meaning of the AWPA.

18.    At all relevant times, Plaintiffs and others similarly situated were "employees" of

Employer Defendants within the meaning of the FLSA.

19.    At all relevant times, Plaintiffs were "employees" of Employer Defendants within the

meaning of the AWPA and New York Labor Law.

20.    At all relevant times, Plaintiffs were manual workers within the meaning of New York

Labor Law § 190.

21.    ILMC is a company incorporated under the laws of North Carolina with its principal

place of business in Vass, North Carolina.

22.    In 2003, 2004, and 2005, Employer Defendants utilized the services of ILMC to recruit

Plaintiffs in Mexico, and in the years 2004 and 2005, to prepare and file applications to

the U.S. government for H-2B workers, as an agent on their behalf.  Temporary foreign

nonagricultural workers are commonly referred to as "H-2B workers" because of their H-

2B non-immigrant visa classification under the federal Immigration and Naturalization

Act.  See 8 U.S.C. 1101(a)(15)(H)(ii)(b).

23.    Upon information and belief, ILMC utilized the services of Manpower of the Americas, a

recruiting agency in Mexico, to act as its agent and recruit the Plaintiffs in Mexico for

work at Employer Defendants' operations in 2003, 2004, and 2005.

24.    At all relevant times during 2003, 2004, and 2005, ILMC was a "farm labor contractor"

of Plaintiffs within the meaning of the AWPA and New York Labor Law.

25.    At all relevant times during 2003, Plaintiffs were lawfully admitted to the United States

on temporary H-2B visas for employment with J.P.'s North, Inc., a duly registered

domestic corporation, pursuant to the clearance order in effect during that season.

26.     In fact, however, Plaintiffs did not work for J.P.'s North, Inc.  Instead, at Employer

Defendants' and ILMC's direction, they worked for Employer Defendants.

27.      At all relevant times during 2004 and 2005, Plaintiffs and others similarly situated, and

during 2006 and 2007, others similarly situated, were lawfully admitted to the United

States on temporary H-2B visas for employment with Employer Defendants pursuant to

the clearance orders in effect during those seasons.

28.     At all relevant times, Plaintiffs José L. Salmerón-de Jesús and Francisco J. Medina-

Suárez were Mexican workers ("trabajadores mexicanos") within the meaning of

Mexican Federal Labor Law.

29.     At all relevant times, Defendants Northern Dutchess Landscaping Inc. and James

Meddaugh were "employers" of Plaintiffs within the meaning of Mexican Federal Labor

Law.

30.     Article 10 of the Mexican Federal Labor Law defines "employer" as any individual or

legal person that uses the services of one or more employees.

31.     Employer Defendants used the services of Plaintiffs José L. Salmerón-de Jesús and

Francisco J. Medina-Suárez on one or more occasions from the year 1998 through the

year 2007.

32.     At all relevant times, Plaintiffs were "employees" of Employer Defendants within the

meaning of Mexican Federal Labor Law.

33.     Article 8 of the Mexican Federal Labor Law defines "employee" as any person who

personally performs work as a subordinate of another individual or legal person.

34.    Plaintiffs José L. Salmerón de-Jesús and Francisco J. Medina-Suárez personally

performed work on a temporary or seasonal basis for Employer Defendants from the year

1998 through the year 2007.

Factual Allegations

35.    Employer Defendants' operations, situated in Dutchess County, New York, include a 60

acre nursery engaged in the production of trees, shrubs, and other agricultural products.

Employer Defendants are in the nursery, landscaping, and hardscaping business.

Hardscaping includes such activities as the construction of walkways, garden paths,

walls, and patios.

36.    Plaintiff José L. Salmerón-de Jesús began working for Employer Defendants on a

seasonal or temporary basis in or around August 1998 and stopped working for Employer

Defendants in or around September 2007.

37.    Plaintiff Francisco J. Medina-Suárez began working for Employer Defendants on a

seasonal or temporary basis in or around August 1998 and stopped working for

Defendants in or around November 2007.

38.    Plaintiffs and others similarly situated worked for Employer Defendants performing

agricultural, landscaping and hardscaping work.  Plaintiff José Lino Salmerón de Jesús

also performed other non-agricultural work, including clearing snow from Employer

Defendants' greenhouse and Defendant James Meddaugh's residence.

39.    At various times during Plaintiffs' employment by Employer Defendants, Employer

Defendants were not engaged in agriculture or secondary agriculture  – within the

meaning of the FLSA and its implementing regulations – in their operations.

40.    Plaintiffs and others similarly situated regularly performed work which was not

agricultural work or secondary agricultural work within the meaning of the FLSA and its

implementing regulations.

41.    During some work weeks, Employer Defendants did not pay Plaintiffs and others

similarly situated the applicable federal minimum wage of $5.15 per hour (until July 23,

2007) or $5.85 (starting July 24, 2007) for every hour worked.

42.    During some work weeks, Employer Defendants did not pay Plaintiffs the New York

minimum wage of $5.15 per hour (until December 31, 2004), $6.00 per hour (starting

January 1, 2005), $6.75 per hour (starting January 1, 2006), and $7.15 per hour (starting

January 1, 2007) for every hour worked.

43.    Plaintiffs and others similarly situated often worked more than forty hours per week.

44.    Plaintiffs and others similarly situated were never paid overtime at a rate of time and one-

half of their regular hourly wages during the work weeks in which they worked more

than forty hours.

45.    During several work weeks, Employer Defendants did not pay Plaintiff José L.

Salmerón-de Jesús any wages at all.

46.    Plaintiff José L. Salmerón-de Jesús was not paid every work week and did not receive his

wages within seven calendar days of the end of the week in which wages were earned.

47.    In the year 2007, Employer Defendants promised Plaintiff José L. Salmerón-de Jesús

that, for those weeks in 2007 that he was unable to work at Employer Defendants'

operations due to a work-related injury, he would be paid in full by Employer Defendants

7

as if he had worked those weeks. In exchange for that promise, Plaintiff José L. Salmerón-de Jesús forewent filing a claim for compensation with the New York State Workers' Compensation Board. Employer Defendants failed to pay Plaintiff José L. Salmerón-de Jesús as promised and Plaintiff suffered damages.

48.   In the year 2007, Employer Defendants clearly and unambiguously promised Plaintiff José L. Salmerón-de Jesús that, for those weeks in 2007 that he was unable to work at Employer Defendants' operations due to a work-related injury, he would be paid in full by Employer Defendants as if he had worked those weeks. Plaintiff reasonably and foreseeably relied upon Employer Defendants' promise and suffered an injury as a result of his reliance, viz., Plaintiff forewent filing a claim for compensation with the New York State Workers' Compensation Board, and Employer Defendants failed to pay Plaintiff as promised.

49.   Employer Defendants did not display an up-to-date poster advising Plaintiffs and other employees of their rights to earn the minimum wage and overtime.

50.   Employer Defendants made deductions from Plaintiffs' pay, in violation of New York Labor Law § 193.

51.   Plaintiffs regularly worked more than ten hours per day for Employer Defendants.

52.   The spread of hours from the start to the finish of Plaintiffs' work days regularly exceeded ten hours.

53.   Employer Defendants failed to pay Plaintiffs an extra hour of pay at the basic minimum hourly wage rate before allowances on any day when Plaintiffs' spread of hours exceeded ten hours.

8

54.  Employer Defendants' failure to pay Plaintiffs and others similarly situated as required by the FLSA and New York Labor Law was willful.

55.  During the years 2004 and 2005, while Plaintiffs and others similarly situated were employed by Employer Defendants as H-2B workers, and during the years 2006 and 2007, while others similarly situated were employed by Employer Defendants as H-2B workers, the work terms which Employer Defendants were contractually bound to pay to all of its H-2B workers during the years 2004, 2005, 2006, and 2007 seasons were determined by, *inter alia*:

a.  The terms offered in the "Applications for Alien Employment Certification" (Form ETA-750) ("clearance order") submitted by Employer Defendants through its agent, ILMC, in each of the relevant years to the United States Department of Labor;

b.  Additional documents submitted to either the Immigration and Naturalization Service or the United States Customs and Immigration Services of the Department of Homeland Security and to the Department of State to obtain visas; and

c.  The terms of work set forth in the regulations governing H-2B visas, 20 C.F.R. Part 655.

56.  Each of the clearance orders submitted to the U.S. Department of Labor included the following certifications in Part 23 of the Form ETA-750:

a.  "The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins

9

work will be equal or exceed the prevailing wage which is applicable at the time the alien begins work."

    b.     "The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law."

57.    Upon information and belief, Defendant James Meddaugh was the corporate officer of Defendant Northern Dutchess Landscaping Inc. who executed the ETA-750 certifications on behalf of Defendant Northern Dutchess Landscaping Inc.

58.    Upon information and belief, the clearance orders in the years 2004 and 2005 under which Plaintiffs and others similarly situated, and in the years 2006 and 2007 under which others similarly situated, were recruited for employment specifically guaranteed that Plaintiffs and others similarly situated would be paid *not less than* $7.00 per hour for the first 40 hours worked, and *not less than* $10.50 per hour for work over 40 hours per week.

59.    The work contracts applicable to Plaintiffs and others similarly situated while they were H-2B workers employed by Employer Defendants were required to offer such workers hourly wages for the first 40 hours per week equal to the required prevailing wage for such work in the area in which they were employed. Such required prevailing wages were determined by the New York State Department of Labor subject to review by the U.S. Department of Labor pursuant to regulations and procedures of the U.S. Department of Labor based upon representations by Employer Defendants as to the work to be performed by workers.

60.    The contract promised workers overtime at a rate of one and one-half times the base

10

wage in accordance with the FLSA and New York Labor Law overtime requirements for all hours worked in excess of 40 hours per week.

61.   In order to get to Employer Defendants' operations and commence work in 2003, 2004, and 2005, Plaintiffs José L. Salmerón-de Jesús and Francisco J. Medina-Suárez and others similarly situated directly incurred various fees and expenses, including, but not limited to:

   a.     Bus, taxi, train, and airplane fare from Plaintiffs' and others similarly situated homes in Mexico to Employer Defendants' operations in Red Hook, New York,

   b.     Money paid to Manpower of the Americas, an agent of ILMC, or deposited in the bank for visa,

   c.     Passport cost,

   d.     Visa cost,

   e.     Border crossing fees, and

   f.     Food and lodging expenses.

62.   In order to return home from their employment at Employer Defendants' operations in 2003, 2004, and 2005, Plaintiffs José L. Salmerón-de Jesús and Francisco J. Medina-Suárez and others similarly situated directly incurred various fees and expenses, including, but not limited to:

   a.     Taxi and airplane fare from Employer Defendants' operations in Red Hook, New York to Plaintiffs' residences in Mexico,

   b.     Border crossing fees, and

   c.     Food expenses.

63.  The expenses described above in paragraphs 53 to 54 were primarily for the benefit of the Employer Defendants as a matter of law under the FLSA and New York Labor Law, and during certain workweeks, operated as *de facto* deductions that reduced Plaintiffs' and others similarly situated wages below the applicable minimum wage.

64.  Upon information and belief, at least some of the expenses described above in paragraphs 53 to 54 were required under Mexican law in effect at the place of recruitment to be paid directly by Employer Defendants or its agents as a recruiter of Mexican workers in Mexico for work in the United States.

65.  In the years 2003, 2004, and 2005, Employer Defendants and ILMC utilized, and ILMC hired, employed, or used, farm labor contractors, upon information and belief, Manpower of the Americas, that were not registered with the United States Department of Labor, to recruit Plaintiffs for work at Defendants' operations. These unlicensed farm labor contractors recruited Plaintiffs either individually or through an agent.

66.  At the times of their recruitment, Plaintiffs received no written disclosure as to the terms and conditions of their work at Employer Defendants' operations.

67.  Employer Defendants and ILMC knowingly gave Plaintiffs false and misleading information regarding the terms of their employment at the time they were recruited, in violation of the AWPA, 29 U.S.C. § 1821(f).

68.  Employer Defendants failed to comply the working arrangement between Defendants and Plaintiffs.

69.  In 2003, 2004, and 2005, ILMC, and its agent, Manpower of the Americas, did not hold valid certificates of farm labor contractor registration issued by the New York

12

Department of Labor for J.P.'s North, Inc. and Northern Dutchess Landscaping Inc.

70.    In 2003, 2004, and 2005, ILMC was a farm labor contractor, and violated New York Labor Law § 212-a in recruiting Plaintiffs for work at Employer Defendants' operations.

71.    In 2003, 2004, and 2005, Employer Defendants were growers and utilized the services of ILMC in violation of New York Labor Law § 212-a.

72.    Upon information and belief, Employer Defendants failed to provide to Plaintiffs the pesticide safety training and proper personal protective equipment or safety gear required by federal and New York law, including 6 N.Y.C.R.R. Part 325.

73.    Upon information and belief, during some years, Employer Defendants failed to obtain and continuously keep in effect workers' compensation coverage for all employees as required by New York law.

74.    Employer Defendants failed to pay Plaintiffs their full wages owed when due, failed to provide proper pay information to Plaintiffs, and failed to keep proper payroll records as required by law.

75.    Employer Defendants did not post conspicuously at the work site a poster setting forth the rights and protections of migrant farmworkers, in violation of the AWPA, 29 U.S.C. § 1821(b).

76.    During the course of their employment, Plaintiffs resided in trailers owned and/or controlled and/or operated and/or provided by the Employer Defendants.

77.    The trailers in which Plaintiffs resided were migrant labor camps or migrant farmworker housing within the meaning of the New York Sanitary Code, Part 15.

78.    Employer Defendants did not post a notice or provide the Plaintiffs with a notice of the

terms and conditions of occupancy of the housing provided.

79.    Employer Defendants failed to post the required certification that the housing provided to the Plaintiffs met the minimum safety and health standards under applicable state and federal law, in violation of the AWPA, 29 U.S.C. § 1823(b).

80.    Conditions at the trailers did not comply with relevant federal, state and local regulations, including New York Sanitary Code, Part 15.

81.    Employer Defendants used, or caused to be used, vehicles for the purpose of transporting the Plaintiffs between various work sites without first ensuring that such vehicles conformed to safety standards prescribed by the United States Department of Labor, in violation of the AWPA, 29 U.S.C. § 1841(b)(1)(A) and 29 C.F.R. §§ 500.104 and 500.105.

82.    Employer Defendants transported the Plaintiffs, or caused the Plaintiffs to be transported, between various work sites in various vehicles without ensuring drivers had valid and appropriate drivers' licenses as provided by state law, in violation of the AWPA, 29 U.S.C. § 1841(b)(1)(B) and 29 C.F.R. § 500.100(a).

83.    Upon information and belief, Employer Defendants transported, or caused the Plaintiffs to be transported, between various work sites in various vehicles without having an insurance policy or liability bond in effect insuring against liability for damage to persons or property arising from the operation of such vehicles in the amount of $100,000 for each seat in each vehicle, in violation of the AWPA, 29 U.S.C. § 1841(b)(1)(C) and 29 C.F.R. §§ 500.120-500.128.

84.    James Meddaugh exercised control over the work performed by Plaintiffs.

85. James Meddaugh had the power to establish, and did establish, the terms of Plaintiffs' employment.

86. James Meddaugh determined the salary to be paid to Plaintiffs.

87. James Meddaugh had the power to hire and fire Plaintiffs.

88. James Meddaugh exercised operational control over significant aspects of the day-to-day functions of Northern Dutchess Landscaping Inc.

89. James Meddaugh actively managed, supervised, and directed the business and operations of Northern Dutchess Landscaping Inc.

90. Employer Defendants are likely to employ Plaintiffs and other class members in future harvest seasons.

91. Employer Defendants operated an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

92. Plaintiffs hereby provide notice of their intent to raise an issue concerning the law of a foreign country pursuant to Rule 44.1 of the Federal Rules of Civil Procedure.

93. Mexican law contains an extraterritorial statutory provision, Article 28 of the Mexican Federal Labor Law ("Article 28"), which creates legal obligations for foreign employers who employ Mexican workers recruited within Mexico to perform work outside of Mexico.

94. Section (I)(b) of Article 28 provides that such employers shall be exclusively responsible for all expenses related to relocating Mexican workers from their homes in Mexico to their places of employment outside of Mexico, including, but not limited to, passport and visa fees, recruitment fees, transportation costs, border crossing fees, and subsistence

costs en route, such as food and lodging.

95.   Section (I)(d) of Article 28 provides that such employers shall provide decent and
      sanitary housing to Mexican workers.

96.   In 2003, 2004, and 2005, Employer Defendants, acting through their agents, ILMC and
      Manpower of the Americas, recruited Plaintiffs José L. Salmerón-de Jesús and Francisco
      J. Medina-Suárez, in Mexico to perform work outside of Mexico.  Therefore, Employer
      Defendants were obligated to fulfill the requirements of Article 28.

97.   Plaintiffs paid employment-related relocation costs out-of-pocket for which they were not
      reimbursed, including, but not limited to, passport and visa fees, transportation costs,
      border crossing fees, and subsistence costs en route, in violation of Article 28.

98.   Employer Defendants failed to ensure that Plaintiffs received decent and sanitary housing
      in violation of Article 28.

99.   Article 28 of Mexican Federal Labor Law constitutes a "working arrangement" between
      Plaintiffs and Employer Defendants which is enforceable through the AWPA, 29 U.S.C.
      § 1822(c).

100.  Employer Defendants and Plaintiffs mutually understood and reasonably expected that
      Mexican law would apply to Plaintiffs' recruitment in Mexico.

101.  In the clearance orders submitted to the U.S. Department of Labor in 2004 and 2005,
      Employer Defendants agreed and promised that, "The job opportunity's terms, conditions
      and occupational environment are not contrary to Federal, State or local law."

102.  At the time of Plaintiffs' recruitment in Mexico in 2004 and 2005, Mexican Federal
      Labor Law was the applicable federal or local law.

103.   Employer Defendants undertook all of the actions and omissions alleged above either
       directly or through their agents who were authorized to undertake such actions and
       omissions.

Causes of Action

I.     Fair Labor Standards Act (Representative Action Claim Against Employer Defendants)

104.   The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs
       1 through 103 as if set forth fully here.

105.   Plaintiffs represent additional similarly situated employees of the Employer Defendants
       who suffered violations of the FLSA minimum wage and overtime provisions and who
       will be joined collectively to this action pursuant to 29 U.S.C. § 216(b).

106.   During Plaintiffs' employment, Employer Defendants willfully failed to pay the federal
       minimum wage of $5.15 per hour (until July 23, 2007) or $5.85 (starting July 24, 2007)
       to Plaintiffs and others similarly situated.  This failure violates the Fair Labor Standards
       Act, 29 U.S.C. § 206 and its implementing regulations.

107.   During Plaintiffs' employment, Employer Defendants willfully failed to pay overtime
       wages to Plaintiffs and others similarly situated.  This failure violates the Fair Labor
       Standards Act, 29 U.S.C. §207 *et seq.* and its implementing regulations.

108.   Employer Defendants also violated the FLSA by failing to keep records as required by
       statute, 29 U.S.C. § 211(c).

109.   The Plaintiffs and others similarly situated are entitled to their unpaid wages, plus an
       additional equal amount in liquidated damages, as a consequence of Employer
       Defendants' unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

110.   The Plaintiffs and others similarly situated are also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

111.   Plaintiffs and others similarly situated also seek, and are entitled to, the attorneys fees incurred by their counsel pursuant to 29 U.S.C. § 216(b).

II.    <u>Migrant and Seasonal Agricultural Worker Protection Act (Against Employer Defendants and ILMC)</u>

112.   The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 111 as if set forth fully here.

113.   Employer Defendants violated Plaintiffs' rights under the AWPA by, <u>inter alia</u>:

   a.   failing to disclose in writing the terms and conditions of employment at the time the Plaintiffs were recruited, in violation of the AWPA, 29 U.S.C. § 1821(a) and (g) and 29 C.F.R. §§ 500.75(b) and 500.78;

   b.   knowingly providing false and misleading information regarding the terms and conditions of employment, in violation of the AWPA, 29 U.S.C. § 1821(f);

   c.   failing to comply with the terms of the working arrangement, as required by the AWPA, 29 U.S.C. § 1822(c) and 29 C.F.R. § 500.72;

   d.   failing to pay each Plaintiff the full wages owed to him when due, as required by the AWPA, 29 U.S.C. § 1822(a);

   e.   failing to make, keep, and preserve the pay records as required under the AWPA, 29 U.S.C. § 1821(d) and 29 C.F.R. § 500.80(a);

   f.   failing to provide each Plaintiff with pay information as required by the AWPA, 29 U.S.C. § 1821(d) and 29 C.F.R. § 500.80(d);

g.     failing to post in a conspicuous place a poster setting forth the rights of

       agricultural workers under AWPA, as required under 29 U.S.C. § 1821(b) and 29

       C.F.R. § 500.75(b);

h.     failing to ensure that the housing provided to the Plaintiffs complied with

       applicable substantive federal and state health and safety standards, in violation of

       the AWPA, 29 U.S.C. § 1823(a) and 29 C.F.R. §500.130;

i.     failing to post at Employer Defendants' labor camp a certificate from an

       appropriate governmental agency stating that the conditions at the camp complied

       with applicable state safety and health standards, in violation of 29 U.S.C. §

       1823(b) and 29 C.F.R. § 500.135(b);

j.     transporting Plaintiffs in unsafe vehicles, in violation of 29 U.S.C. 1841(b)(1)(A)

       and 29 C.F.R. 500.104 and 500.105;

k.     transporting Plaintiffs in vehicles driven by persons without valid and appropriate

       drivers' licenses as provided by state law, in violation of 29 U.S.C. §

       1841(b)(1)(B) and 29 C.F.R. § 500.100(a);

l.     transporting Plaintiffs in vehicles without having an adequate insurance policy or

       liability bond in effect, in violation of 29 U.S.C. § 1841(b)(1)(C) and 29 C.F.R.

       §§ 500.120-500.128; and

m.     utilizing the services of unlicensed farm labor contractors, in violation of 29

       U.S.C. § 1842.

114.   ILMC violated Plaintiffs' rights under the AWPA by, inter alia:

a.     failing to disclose in writing the terms and conditions of employment at the time

19

the Plaintiffs were recruited, in violation of the AWPA, 29 U.S.C. § 1821(a) and

(g) and 29 C.F.R. § 500.75(b) and 500.78;

b.    knowingly providing false and misleading information regarding the terms and

conditions of employment, in violation of the AWPA, 29 U.S.C. § 1821(f) and 29

C.F.R. § 500.77;

c.    hiring, employing, or using an unregistered employee or subcontractor to perform

farm labor contracting activities, in violation of the AWPA, 29 U.S.C. § 1811(b)

and 29 U.S.C. § 500.41; and

d.    utilizing the services of farm labor contractors in supplying Plaintiffs, migrant

workers, without first taking reasonable steps to determine that the farm labor

contractor possesses a valid registration certificate, in violation of the AWPA, 29

U.S.C. § 1842 and 29 C.F.R. § 500.71.

115.    The violations of the AWPA as set forth in Plaintiffs' Second Cause of Action were the

natural consequence of the conscious and deliberate actions of Defendants and were

intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

116.    As a result of the violations of the AWPA set forth above, Plaintiffs have suffered

damages.

117.    For each such violation of the AWPA, each Plaintiff is entitled to recover the greater of

his actual damages or up to $500 per violation in statutory damages, in accordance with

29 U.S.C. § 1854(c).

III.    New York Labor Law (Against Employer Defendants)

118.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1

20

through 117 as if set forth fully here.

119.   Employer Defendants paid Plaintiffs less than the state-mandated minimum wage, thus

violating the New York Labor Law, §§ 652 and 670 *et seq.*

120.   Employer Defendants failed to pay overtime wages to Plaintiffs in violation of New York

Labor Law Article 19 and its implementing regulations, 12 NYCRR §142-2.2, *et seq.*

121.   Employer Defendants made deductions from Plaintiffs' pay, in violation of New York

Labor Law § 193.

122.   Employer Defendants failed to pay Plaintiffs an extra hour of pay at the basic minimum

hourly wage rate before allowances for every day when Plaintiffs' work days from start

to finish were longer than ten hours. This failure violates New York Labor Law §§ 160

*et seq.* and §§ 190 *et seq.* and New York State Department of Labor regulations,

including N.Y.C.R.R. § 142-2.4.

123.   Plaintiff José L. Salmerón-de Jesús was not paid weekly and did not receive his wages

within seven calendar days of the end of the week in which their wages were earned, in

violation of New York Labor Law § 191.

124.   Employer Defendants' failure to pay the required wages as set forth above was willful

within the meaning of New York Labor Law §§ 198, 663, and 681.

125.   Plaintiffs are entitled to the unpaid wages mandated by New York Labor Law, plus an

additional 25 percent as liquidated damages, as a consequence of the Defendants'

unlawful actions and omissions, in accordance with New York Labor Law §§ 198, 663,

and 681.

126.   Plaintiffs also seek, and are entitled to, attorneys fees incurred by their counsel.

IV.    New York Contract Law (Against Employer Defendants)

127.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1

through 126 as if set forth fully here.

128.    In the years 2004 and 2005, Plaintiffs performed work for Employer Defendants based on

the promises contained in, inter alia, the clearance order contracts, additional documents

submitted to either the Immigration and Naturalization Service or the United States

Customs and Immigration Services of the Department of Homeland Security and to the

Department of State to obtain visas, and the terms of work set forth in the regulations

governing H-2B visas, 20 C.F.R. Part 655.  Employer Defendants failed to pay to

Plaintiffs the hourly wages promised, and the terms, conditions, and occupational

environment of Plaintiffs' employment were contrary to federal, state and local law.  By

failing to comply with the terms and conditions of employment promised to Plaintiffs,

Employer Defendants violated their employment contracts entered into with Plaintiffs.

129.    In the year 2007, Employer Defendants promised Plaintiff José L. Salmerón-de Jesús

that, for those weeks in 2007 he was unable to work at Employer Defendants' operations

due to a work-related injury, he would be paid in full by Employer Defendants as if he

had worked those weeks.  In exchange for this promise, Plaintiff José L. Salmerón-de

Jesús forewent filing a claim for compensation with the New York State Workers'

Compensation Board.  Employer Defendants failed to pay Plaintiff José L. Salmerón-de

Jesús as promised, and violated the contract entered into with Plaintiff José L. Salmerón-

de Jesús.

130.    As a result of the Employer Defendants' violations of these employment contracts,

Plaintiffs suffered damages.

V.    Promissory Estoppel (Against Employer Defendants)

131.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1

through 130 as if set forth fully here.

132.    In the year 2007, Employer Defendants clearly and unambiguously promised Plaintiff

José L. Salmerón-de Jesús that, for those weeks in 2007 that he was unable to work at

Employer Defendants' operations due to a work-related injury, he would be paid in full

by Employer Defendants as if he had worked those weeks.  Plaintiff reasonably and

foreseeably relied upon their promise.

133.    Plaintiff suffered an injury as a result of his reliance, viz., Plaintiff forewent filing a claim

for compensation with the New York State Workers' Compensation Board, and

Employer Defendants failed to pay Plaintiff as promised.

VI.    Unjust Enrichment (Against Employer Defendants)

134.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1

through 133 as if set forth fully here.

135.    By their actions, stated above, Employer Defendants were unjustly enriched by services

performed by Plaintiffs for Employer Defendants.

136.    The circumstances between Plaintiffs and the Employer Defendants are such that equity

and good conscience require Employer Defendants to make restitution.

137.    Plaintiffs have therefore been damaged in an amount to be later determined.

VII.    Quantum Meruit (Against Employer Defendants)

138.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1

through 137 as if set forth fully here.

139.    By its actions, stated above, Employer Defendants wrongfully failed to pay Plaintiffs the

reasonable value of the services performed by them for Employer Defendants.

140.    Plaintiffs have therefore been damaged in an amount later to be determined.

WHEREFORE, Plaintiffs request that this Court enter an Order:

a.    Assuming jurisdiction over this action;

b.    Declaring that Employer Defendants violated the Fair Labor Standards Act, the

Migrant and Seasonal Agricultural Worker Protection Act, and New York Labor

Law;

c.    Permanently enjoining Employer Defendants from further violations of the FLSA,

the AWPA, and New York Labor Law;

d.    Declaring that ILMC violated the Migrant and Seasonal Agricultural Worker

Protection Act;

e.    Permanently enjoining ILMC from further violations of the Migrant and Seasonal

Agricultural Worker Protection Act;

f.    Granting judgment to Plaintiffs and others similarly situated on their FLSA claims

and awarding each of the Plaintiffs and others similarly situated their unpaid

overtime and other wages and an equal amount in liquidated damages;

g.    Granting judgment to Plaintiffs on each claim under the AWPA for actual

damages or $500 per violation in statutory damages, whichever is greater, plus

prejudgment interest for every AWPA violation described above;

24

h.     Granting judgment to Plaintiffs on their New York Labor Law claims and awarding each of the Plaintiffs his unpaid overtime and other wages as well as liquidated damages provided for by statute;

i.     Granting judgment in favor of Plaintiffs on their claims brought under New York contract law in the amount of their actual damages plus punitive damages

j.     Granting judgment in favor of Plaintiffs on their claims brought under promissory estoppel in the amount of their actual damages plus punitive damages;

k.     Granting Plaintiffs restitution;

l.     Granting Plaintiffs the reasonable value of their services;

m.     Awarding Plaintiffs prejudgment and postjudgment interest as allowed by law;

n.     Awarding the Plaintiffs their costs and reasonable attorneys' fees; and

o.     Granting such further relief as the Court finds just.

Dated:     Kingston, New York
          March 3, 2008

Respectfully Submitted,

WORKERS' RIGHTS LAW CENTER OF
NEW YORK, INC.

By: _____

Patricia C. Kakalec (PK-8452)
tkakalec@wnylc.com
101 Hurley Street, Suite 5
Kingston, NY 12401
(845) 331-6615 (tel.); (845) 331-6617 (fax)

Attorneys for Plaintiffs

25